UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY DEMELLO, | No. 1:19-cv-00864-GSA |
| Plaintiff, | **ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |
| v. | |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

## I.      Introduction

Plaintiff Anthony Demello ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Supplementary Security Income ("SSI") pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]  *See* Docs. 13, 14, and 15.  Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and applicable law. Therefore, Plaintiff's appeal is denied.

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 6 and 8.

**II.    Procedural Background**

Plaintiff previously applied for supplemental security income.  AR 33.  His application for benefits was denied at the hearing level on October 22, 2014.  AR 33, 76-88.  Plaintiff did not appeal the decision.

On May 27, 2016, Plaintiff filed the application for supplemental security income that is the subject of this appeal.  AR 33.  He again alleged disability beginning July 9, 2009.  AR 33.

The Commissioner denied the application initially on November 30, 2016, and upon reconsideration on March 23, 2017.  AR 33.  On March 30, 2017, Plaintiff filed a timely request for a hearing before an Administrative Law Judge.  AR 33.

Administrative Law Judge Trevor Skarda presided over an administrative hearing on March 12, 2018.  AR 53-72.  Plaintiff, represented by counsel, appeared and testified.  AR 53.  An impartial vocational expert, John J. Komar (the "VE") also appeared and testified.  AR 53, 282.

On June 26, 2018, the ALJ denied Plaintiff's application.  AR 33-47.  The Appeals Council denied review on April 11, 2019. AR 12-14.  On June 24, 2019, Plaintiff filed a timely complaint seeking this Court's review.  Doc. 1.

**III.    Factual Background**

**A.    Plaintiff's Testimony**

Plaintiff (born July 1990) lived with his retired father.  AR 58.  He had completed high school and did not have a driver's license.  AR 58.  Plaintiff was six feet, two inches tall and weighed 278 pounds, having recently gained fifteen or twenty pounds due to stress, depression and anxiety.  AR 57-58.

About eighteen months before the hearing Plaintiff was injured in a car accident, exacerbating the shoulder pain from the injury that had been the subject of his prior application for supplemental security income.  AR 62.  The shoulder pain, which had previously been dull, was now sharp and worsened if he did not move it.  AR 62.  Plaintiff rated his pain as 8/10.  AR 63.  Plaintiff had intense pain if he sat for more than fifteen or twenty minutes.  He could not

1   wear jeans when riding in the car because he got "shooting pains in [his] butt." AR 63.

2   Medications, including pain relievers and muscle relaxers reduced the pain to 7/10, but only for a

3   number of hours. AR 63-64. The medications caused "brain fog." AR 64.

4        Plaintiff could sit or stand in one place for no more than twenty minutes. AR 64. He

5   could carry fifteen to twenty-five pounds. AR 65. Plaintiff was able to care for his own personal

6   needs. AR 61.

7        About four weeks before the hearing, Plaintiff began mental health treatment with Mr.

8   Jonathan Hudson. AR 65. In late 2014 and early 2015, he had received mental health treatment

9   from Dr. Robert Moody but stopped treatment when Dr. Moody "went through some kind of

10  transfer" and Plaintiff "had to reapply or he moved into like a different office or something." AR

11  65-66. Plaintiff's mental health issues were "just not being able to go out, fend for myself, have a

12  normal job." AR 66. These factors caused depression, anxiety and anger arising from his

13  isolation. AR 66. Plaintiff experienced anxiety from being around his family too long. AR 66-

14  67. His concentration was limited. AR 68.

15       On a typical day Plaintiff tried to take at least three walks of twenty minutes, followed by

16  twenty minutes or more of stretching. AR 59. Plaintiff learned the stretching exercises in the

17  course of physical therapy. AR 59. The rest of the day Plaintiff endeavored to experience as

18  little pain as possible. AR 59. Plaintiff walked the family's elderly dog and cleaned up after her,

19  but did not perform other household chores since his father had a housekeeper to care for him.

20  AR 59-60. Plaintiff occasionally did his own laundry, or loaded the dishwasher. AR 60. His

21  father handled household management and paid the bills. AR 61.

22       In a pain questionnaire completed in June 2016, Plaintiff reported constant pain in his

23  back and sharp pains in his left rib and shoulder. AR 233. Sneezing caused sharp pain in the soft

24  tissue injury received from a May 2016 car accident. AR 233. Medications included Gabapentin,

25  Flexeril, Naproxen and Norco. AR 233. Norco made Plaintiff feel fidgety and itchy. AR 234.

26  Long walks and stretching helped relieve Plaintiff's pain. AR 234. Plaintiff could walk one to

27  three miles at a time, and sit or stand in one place fifteen to twenty minutes at a time. AR 235.

28

1

**B.    Medical Records**

2       The record includes eleven brief psychotherapy session notes prepared by Robert Moody,

3   Ph.D., from September 2014 through April 2015.  AR 521-32.  The sessions generally consisted

4   of discussion concerning Plaintiff's social and occupational difficulties although Plaintiff was

5   optimistic about his intended career as a stand-up comic.

6       The record also includes treatment records from Plaintiff's primary care physician,

7   Mitchell Cohen, D.O., from July 2015 through January 2018.  AR 360-74, 439-56, 487-513.  Dr.

8   Cohen diagnosed lumbago and thoracic or lumbosacral neuritis or radiculitis.  AR 371.  The

9   doctor prescribed Norco, Cyclobenzaprine, Gabapentin, Naproxen and a lumbar back brace.  AR

10  372.  Dr. Cohen also referred Plaintiff for physical therapy, which Plaintiff received from June 1

11  to June 25, 2015.  AR 400-23.  Notably, near the end of the treatment period, Dr. Cohen

12  encouraged Plaintiff to try to exercise more.  AR 500.

13      In May 2016, Plaintiff was a passenger in a car involved in a two-car collision.  AR 294-

14  98.  Plaintiff complained of pain to his right ribs and transported himself to Memorial Medical

15  Center for treatment.  AR 298.  Emergency Department personnel diagnosed Plaintiff with

16  lumbar strain, and a rib injury received from impact with the airbag.  AR 316.  Robert Wanklin,

17  M.D., noted, "Patient was ambulatory halfway to his bed [here in] the ER and then began

18  limping."  AR 314.  The hospital work-up, including fast scan and chest x-rays, was normal.  AR

19  316, 317.

20      Plaintiff received frequent chiropractic adjustments from May through September 2016.

21  AR 382-87, 471-82.

22      On June 18, 2016, magnetic resonance imaging of Plaintiff's lumbar spine revealed mild

23  L3-L4 degenerative disc disease with minor bulging of the disc, but without focal protrusion or

24  canal encroachment.  AR 375.  The examination was otherwise negative.  AR 375.

25      In January 2018, Dr. Cohen noted that Plaintiff would be contacting the psychiatry

26  department to get a mental health form filled out for his disability applications.  AR 506.  In

27

28

4

February 2018, Plaintiff "self-referred" to psychologist Jonathan Hudson, L.C.S.W., Ph.D.,[2]

complaining of depression, anxiety, panic attacks and chronic pain.  AR 514.  The record includes

notes from two one-hour therapy sessions.  AR 514-20.

## IV.    Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the

Commissioner denying a claimant disability benefits.  "This court may set aside the

Commissioner's denial of disability insurance benefits when the ALJ's findings are based on

legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v.*

*Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence

within the record that could lead a reasonable mind to accept a conclusion regarding disability

status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less

than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation

omitted).  When performing this analysis, the court must "consider the entire record as a whole

and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v.*

*Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks

omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its

judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112

F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "Finally, the court will not reverse an ALJ's

decision for harmless error, which exists when it is clear from the record that the ALJ's error was

inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d

1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

---

[2] Dr. Hudson does not appear to be affiliated with Dr. Cohen's practice group.

5

1

2

## V.     The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment of impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.920(a)(4).  The ALJ must consider objective medical evidence and opinion testimony.  20 C.F.R. §§ 416.927; 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. §§ 416.920(a)-(f).

In addition, when a claimant has one or more previous denials of applications for disability benefits, as Plaintiff does in this case, the claimant must overcome a presumption of nondisability. The principles of *res judicata* apply to administrative decisions, although the doctrine is less rigidly applied to administrative proceedings than in court. *Chavez v. Bowen,* 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen,* 844 F.2d 664, 666 (9th Cir. 1988).

6

Social Security Acquiescence Ruling ("SSR") 97–4(9), adopting *Chavez,* applies to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a prior claim in which there has been a final administrative decision that the claimant is not disabled. A previous final determination of nondisability creates a presumption of continuing nondisability in the unadjudicated period. *Lester v. Chater,* 81 F.3d 821, 827 (9th Cir. 1995). The presumption may be overcome by a showing of changed circumstances, such as new and material changes to the claimant's residual functional capacity, age, education, or work experience. *Id.* at 827–28; *Chavez,* 844 F.2d at 693.

### VI.    Summary of the ALJ's Decision

As previously noted, Plaintiff did not appeal the Commissioner's denial of his prior application for supplemental security income.  AR 34.  Accordingly, for the application that is the subject of this case (the "pending application"), the ALJ considered evidence beginning on October 23, 2014, the date of the last hearing decision.  AR 33.  The ALJ found that Plaintiff rebutted the initial presumption of continued nondisability by introducing new and material evidence about his ongoing severe impairments.  AR 34.  Nonetheless, the ALJ found that *Chavez* applied to the pending application because the new evidence did not establish that the changed circumstances actually increased Plaintiff's impairments. AR 34.  Accordingly, the ALJ adopted the prior findings concerning the severity of Plaintiff's physical and mental impairments, their limiting effects on his residual functional capacity, and Plaintiff's ability to perform basic work activity.  AR 34.  The ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act since May 27, 2016, the date on which Plaintiff filed the pending application.  AR 35.

Using the five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 36-46.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of May 27, 2016.  AR 36.  Plaintiff's severe impairments included: degenerative disc disease with associated lordosis of the cervical spine; thoracic curvature with associated pain; personality disorder; and, depression.  AR 36.  The

1  severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R.

2  Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d); 416.925; and 416.926).  AR 37-39.

3       The ALJ concluded that Plaintiff had the residual functional capacity to perform sedentary

4  work as defined in 20 C.F.R. § 416.967(a) except that Plaintiff could only occasionally climb

5  ramps and stairs, and stoop, kneel, crouch and crawl.  AR 39.  Plaintiff could never climb ladders,

6  ropes or scaffolds.  AR 39.  He must avoid concentrated exposure to extreme cold, excessive

7  vibration, and hazards including dangerous moving machinery or unprotected heights.  AR 39.

8  He was limited to simple, routine and repetitive tasks; low stress jobs involving only occasional

9  decision making; occasional changes in work setting; and only occasional co-worker and public

10  interaction.  AR 39.

11       Plaintiff had no past relevant work but was able to perform jobs existing in significant

12  numbers in the national economy.  AR 45.  Accordingly, the ALJ concluded that Plaintiff was not

13  disabled from the application date of May 27, 2016 through the decision date of June 26, 2018.

14  AR 46-47.

15       **VII.**    **Reliability of Plaintiff's Symptom Testimony**

16       Plaintiff contends that the ALJ erred in rejecting Plaintiff's testimony as inconsistent with

17  objective medical evidence.  The Commissioner counters that the ALJ appropriately evaluated

18  Plaintiff's subjective complaints in light of the objective medical evidence and other evidence in

19  the record.

20       An ALJ is responsible for determining credibility, resolving conflicts in medical

21  testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

22  His or her findings of fact must be supported by "clear and convincing evidence." *Burrell v.*

23  *Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

24       To determine whether the ALJ's findings are supported by sufficient evidence a court

25  must consider the record as a whole, weighing both the evidence that supports the ALJ's

26  determination and the evidence against it. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

27  1989).  "[A] federal court's review of Social Security determinations is quite limited." *Brown-*

28

1  *Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  "For highly fact-intensive individualized

2  determinations like a claimant's entitlement to disability benefits, Congress places a premium

3  upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the

4  opportunity for reviewing courts to substitute their discretion for that of the agency."  *Id.* (quoting

5  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (quoting *Consolo v.*

6  *Fed. Maritime Comm'n*, 383 U.S. 607, 621 (1966)) (internal quotation marks omitted).  Federal

7  courts should generally "'leave it to the ALJ to determine credibility, resolve conflicts in the

8  testimony, and resolve ambiguities in the record.'"  *Brown-Hunter*, 806 F.3d at 492 (quoting

9  *Treichler*, 775 F.3d at 1098).

10       A claimant's statement of pain or other symptoms is not conclusive evidence of a physical

11  or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.  "An ALJ

12  cannot be required to believe every allegation of [disability], or else disability benefits would be

13  available for the asking, a result plainly contrary to the [Social Security Act]."  *Fair v. Bowen*,

14  885 F.2d 597, 603 (9th Cir. 1989).

15       An ALJ performs a two-step analysis to determine whether a claimant's testimony

16  regarding subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014

17  (9th Cir. 2014); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); S.S.R 16-3p at 3.  First, the

18  claimant must produce objective medical evidence of an impairment that could reasonably be

19  expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014;

20  *Smolen*, 80 F.3d at 1281-1282.  In this case, the first step is satisfied by the ALJ's finding that

21  Plaintiff's "medically determinable impairments could reasonably be expected to produce the

22  alleged symptoms."  AR 42.  The ALJ did not find Plaintiff to be malingering.

23       If the claimant satisfies the first step and there is no evidence of malingering, the ALJ

24  must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent

25  to which the symptoms limit an individual's ability to perform work-related activities."  S.S.R.

26  16-3p at 2.  "[S]ome individuals may experience symptoms differently and may be limited by

27  symptoms to a greater or lesser extent than other individuals with the same medical impairments,

28

the same objective medical evidence and the same non-medical evidence." S.S.R. 16-3p at 5.  In reaching a conclusion, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and, any other relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5.  "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  SSR 16-3p at *10.

Because a "claimant's subjective statements may tell of greater limitations than can medical evidence alone," an "ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence."  *Tonapetyan*, 242 F.3d at 1147-48 (quoting *Fair*, 885 F.2d at 602 (9th Cir. 1989)).  *See also Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (holding that when there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence).  "Congress clearly meant that so long as the pain is *associated* with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability."  *Id.* (internal quotation marks omitted).

The law does not require an ALJ simply to ignore inconsistencies between objective medical evidence and a claimant's testimony.  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  As part of his or her analysis of the record as a whole, an ALJ properly considers whether the objective medical evidence supports or is consistent with a claimant's pain testimony.  *Id.*; 20 C.F.R. §§ 404.1529(c)(4), 416.1529(c)(4) (symptoms are determined to

1   diminish residual functional capacity only to the extent that the alleged functional limitations and

2   restrictions "can reasonably be accepted as consistent with the objective medical evidence and

3   other evidence").

4           The hearing decision summarizes the ALJ's reasoning in concluding that Plaintiff's

5   testimony was not fully consistent with objective evidence in the record:

> As for the claimant's statements about the intensity, persistence, and
> limiting effects of his or her symptoms, they are inconsistent
> because, while severe, the objective evidence and observations made
> by the internal medicine and psychological consultative examiners
> describe discrepant states of health.   At the internal medicine
> consultative examination on October 12, 2016, the claimant was
> observed to physically functional normally [*sic*], while at the
> psychological consultative examination on October 31, 2016, the
> claimant was observed to be experiencing physical pain, had
> difficulty standing from a seated position, and walked slowly with a
> guarded gait.   Additionally, the records do not indicate any
> worsening in the claimant's physical impairments, and indeed, there
> was noted improvement in his physical impairments.

13          AR 42 (citations to administrative record omitted).

14          The hearing decision sets forth abundant evidence in the record to support the ALJ's

15  determination that Plaintiff's representations to the agency were not fully credible.   Nonetheless,

16  as will be obvious in the discussion of the ALJ's analysis of Plaintiff's residual functional

17  capacity below, the ALJ did not fully disregard Plaintiff's testimony but carefully considered it as

18  part of the evaluation of expert medical opinion.   The Court will not second guess the ALJ's

19  assessment of Plaintiff's credibility.

20      **VIII.   The ALJ Determined That Plaintiff's Residual Functional Capacity**
        **Must Be Evaluated Using the Principles of Administrative *Res Judicata***

21

22          Plaintiff contends that the ALJ erred in failing to set forth specific and legitimate reasons

23  for rejecting the opinions of Drs. Cohen and Hudson.   The Commissioner responds that the ALJ's

24  decision was supported by substantial evidence.   The Court is puzzled by the parties' omission of

25  any reference to the ALJ's ultimate determination that Plaintiff failed to establish changed

26  circumstances indicating greater disability and that *res judicata* applied.   *See* AR 34, 39-40.

27          When a claimant has one or more previous denials of applications for disability benefits,

28

11

1    as Plaintiff has in this case, he or she must overcome a presumption of non-disability. The

2    principles of *res judicata* apply to administrative decisions, although the doctrine is less rigidly

3    applied in administrative proceedings than in court. *Chavez*, 844 F.2d at 693; *Gregory*, 844 F.2d

4    at 666. Social Security Ruling (SSR) 96-4(9), adopting *Chavez*, applies to cases involving a

5    subsequent disability claim with an unadjudicated period arising under the same title of the Social

6    Security Act as a prior claim in which there has been a final administrative decision that the

7    claimant is not disabled. A previous final determination of non-disability creates a presumption of

8    continuing non-disability in the unadjudicated period. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir.

9    1995). The presumption may be overcome by a showing of changed circumstances, such as new

10   and material changes to the claimant's residual functional capacity, age, education, or work

11   experience. *Id*. at 827-28; *Chavez*, 844 F.2d at 693.

12          In evaluating the new application, the ALJ must first determine whether changed

13   circumstances exist that prevent a finding of continuing non-disability. *Scott v. Colvin*, 2014 WL

14   3797491 at *15 (S.D.Cal. Aug. 1, 2014) (No. 13-CV-1189 W(DHB)). If changed circumstances

15   exist, the prior residual functional capacity is still subject to *res judicata*. *Id.* The ALJ must

16   determine whether new and material evidence supports a finding that the claimant's residual

17   functional capacity has changed. *Id.* "*Chavez* explicitly states that a claimant must prove 'changed

18   circumstances' indicating greater disability." *Bose v. Astrue*, 2011 WL 1211601 at * 9 (D.Ariz.

19   Mar. 31, 2011) (No. CV 09- 02257-PHX-MHM). Thus, Plaintiff needed to prove both changed

20   circumstances and that the changed circumstances resulted in greater disability.  *Id.* at *10.

21          In the pending case, Plaintiff does not argue that either doctor's opinion supported a

22   finding of either changed circumstances or greater disability. In fact, Plaintiff does not address the

23   presumption of non-disability, or his burden to prove greater disability in any way. Nonetheless,

24   the Court must evaluate the ALJ's assessment of expert medical opinion in the context of

25   administrative *res judicata*.

26   ///

27   ///

28                                                                12

### A.    Medical Opinions

#### 1.    Agency Physicians and Psychologists

On initial review in November 2016, internist E. Wong, M.D., opined that Plaintiff's medical condition had significantly improved since the hearing decision denying his prior application for benefits.  AR 103.  Dr. Wong opined that Plaintiff had no severe medical impairment.  AR 103.  The doctor added that Plaintiff had improved following his motor vehicle accident and that any injuries incurred in the accident would be nonsevere within twelve months. AR 106.  J. Collado, M.D., opined that Plaintiff's mental health impairments remained unchanged since the prior determination.  AR 104.  On reconsideration in March 2017, Judith E. Meyers, Psy.D., agreed with Dr. Collado's opinion, and D. Pong, M.D., agreed with Dr. Wong's opinion.. AR 117, 120.

Dr. Pong opined that Plaintiff retained the physical residual functional capacity to lift and carry ten pounds both frequently and occasionally; to stand and walk for two hours in an eight-hour workday; and, to sit about six hours in an eight-hour workday.  AR 119.  Plaintiff had unlimited ability to balance.  AR 119.  He could occasionally climb stairs and ramps, stoop, crouch, and crawl.  AR 119.  He should never climb ropes, ladders or scaffolds.  AR 119. Plaintiff should avoid concentrated exposure to extreme cold, vibration and hazards such as machinery and heights.  AR 120.

#### 2.    Consultative Evaluation: Internal Medicine

On October 12, 2016,  internist Robert Wagner, M.D., performed a consultative internal medicine examination of Plaintiff.  AR 424-28.  Dr. Wagner observed that Plaintiff walked without assistance, sat comfortably, and was easily able to get on and off the examining table and bend at the waist to put shoes on and off.  AR  425.  He spontaneously brought his foot to his knee to take off his socks.  AR 425.  Plaintiff demonstrated "good dexterity and flexibility."  AR 425.  He had some limitations in the range of motion of his spine and shoulder joints.  AR 426-27.  Strength, sensation and reflexes were intact.  AE 427.  Dr. Wagner diagnosed thoracolumbar back pain consistent with occasional musculoligamentous strain; trapezius pain appearing to be

occasional muscle stiffness; and, right wrist pain with a good range of motion and grip strength. AR 427.

In Dr. Wagner's opinion, Plaintiff had no limitations in sitting, standing or walking.  AR 427-28.  He could lift fifty pounds occasionally and 25 pounds frequently.  AR 428.  He could frequently stoop.  AR 428.  Plaintiff had no environmental or manipulative limitations.  AR 428.

### 3. Consultative Psychological Assessment (2014)

In June 2014, Patricia Spivey, Psy.D., provided a consultative report.  AR 304-10.  Dr. Spivey diagnosed:

Axis I:         Pain Disorder associated with psychological factors

Axis II:        Personality Disorder NOS

Axis III:       Deferred to medical records

Axis IV:        Unemployed

Axis V:         GAF: 60

AR 306.[3]

Dr. Spivey wrote:

> The claimant appears to have some pain associated with his mood. There is poor insight and somatization is suggested in his case.  He does come across as neurotic and likely has a personality disorder. Cognitively he is very smart.  He did well on the tests.  He has no memory problems.  His emotional problems are not interfering with cognition to any significant degree.  He might have some substance issue but not enough collateral information is available.  He had one DUI and admits using cannabis for pain.  He would be at risk for painkiller addiction given the rest of his history and presentation but current prescriptions don't suggest a severe problem.

> AR 307.

The doctor opined that Plaintiff had no impairment of his ability to follow simple or complex instructions; maintain adequate pace or persistence to complete one to two step simple

---

[3] The Global Assessment of Functioning (GAF) scale is a rating from 0 to 100 and considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. *Diagnostic and Statistical Manual of Mental Disorders*, 32-35 (4th ed. American Psychiatric Association 1994). A GAF of 51-60 corresponds to moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or any serious impairment in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).. *Id.*

repetitive tasks; verbally communicate effectively with others; communicate effectively in writing; and, interact appropriately with co-workers, supervisors and the public on a daily basis. AR 307.  Plaintiff's ability to maintain adequate pace or persistence to complete complex tasks was mildly impaired.  AR 307.  Plaintiff was moderately impaired in his ability to maintain adequate attention and concentration; adapt to changes in job routine; withstand the stress of a routine workday; and, maintain emotional stability and predictability.  AR 307.

### 4.     Consultative Psychological Assessment (2016)

Psychologist Jacklyn Chandler, Ph.D., evaluated Plaintiff's mental health on October 31, 2016.  AR 431-34.  Plaintiff told Dr. Chandler that his activities of daily living were limited due to chronic pain and limited mobility.  AR 432.  He walked with a slow guarded gait and had difficulty standing from a seated position.  AR 432.  He was unable to drive, use public transportation, do simple household chores or go shopping, but could prepare a simple meal and dress and groom himself.  AR 432.  Dr. Chandler diagnosed unspecified depressive disorder and generalized anxiety disorder.  AR 433.  Plaintiff advised the doctor that he was prescribed medication to alleviate his depressive symptoms, but Dr. Chandler observed that Plaintiff's symptoms were only partially controlled by the medication.  AR 433.

Plaintiff had difficulty maintaining attention and concentration for the duration of the interview and moderate difficulty enduring the stress of the interview.  AR 433.  He had mild difficulty interacting appropriately with Dr. Chandler.  AR 433.  Dr. Chandler opined that Plaintiff's ability to interact with the public, supervisors and coworkers appeared to be moderately impaired.  AR 433.

### 5.     Physical Medical Source Statement

In January 2017, Dr. Cohen completed a physical medical source statement stating that he treated Plaintiff for lower back pain.  AR 462-65. Medication, physical therapy and chiropractic adjustment had not been helpful.  AR 462.

In Dr. Cohen's opinion, Plaintiff could sit for two hours at a time and for a total of four hours in an eight-hour workday.  AR 463.  Plaintiff could stand or walk for two hours at a time,

1   and for a total of four hours in an eight-hour workday.  AR 463.  Plaintiff needed to be able to

2   change positions at will and include periods of walking in the course of his workday.  AR 463.

3   Plaintiff could lift and carry fifty pounds rarely, twenty pounds occasionally and ten pounds or

4   less frequently.  AR 463.  He could occasionally twist and climb stairs and frequently bend,

5   crouch and climb ladders.  AR 463-64.  He had no manipulative limitations.  AR 464.  Dr. Cohen

6   stated he was "unable to assess" Plaintiff's ability to tolerate work stress.  AR 464.  Plaintiff was

7   likely to be absent from work four days each month.  AR 464.

8        Dr. Cohen completed a second medical source statement in January 2018.  AR 483-86.

9   This statement is less complete and frequently directs the recipient to "see notes."  AR 483.  Dr.

10  Cohen stated that he was unable to be sure of Plaintiff's ability to sit, stand, walk, lift and carry,

11  or to opine about the percentage of the workday that Plaintiff was likely to be off task.  AR 484-

12  85.  Plaintiff was likely to be absent from work about two days per month.  AR 485.

13                  **6.    Mental Residual Functional Capacity Questionnaire**

14       On March 8, 2018, Dr. Hudson completed a mental health residual functional capacity

15  questionnaire.  AR 534-36.  The psychologist diagnosed persistent chronic depression n/o, panic

16  disorder, anxiety disorder due to medical condition and generalized anxiety.  AR 534.  In Dr.

17  Hudson's opinion, Plaintiff's impairments precluded performance of the following capabilities

18  about five percent of the workday: remembering locations and work-like procedures; carrying out

19  very short and simple instructions; interacting appropriately with the general public; asking

20  simple questions or requesting assistance; maintaining socially appropriate behavior and adhering

21  to basic standards of neatness and cleanliness; responding appropriately to changes in the work

22  setting; and, travelling to unfamiliar locations or using public transportation.  AR 534-35.

23  Plaintiff's impairments precluded performance of the following capabilities about ten percent of

24  the workday: understanding and remembering very short and simple instructions; carrying out

25  detailed instructions performing activities within a schedule, maintaining regular attendance, and

26  being punctual within customary tolerances; working in coordination with or in proximity to

27  others without being distracted by them; making simple work-related decisions; accepting

28                                       16

instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; being aware of normal hazards and taking appropriate precautions; and, setting realistic goals and making plans independently of others.  AR 534-35.  Plaintiff's impairments precluded performance of the following capabilities fifteen percent or more of the workday: understanding and remembering detailed instructions; maintaining attention and concentration for extended periods of time; sustaining an ordinary routine without special supervision; and, completing a normal workday and workweek without interruption from psychologically based symptoms and performing at a consistent pace an unreasonable number and length of rest periods.  AR 534-35.  Plaintiff was likely to be absent from work five or more days per month.  AR 535, 536.

### B.   Determining Residual Functional Capacity

"Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p.  The residual functional capacity assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments.  SSR 96-8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (residual functional capacity is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining residual functional capacity). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In doing so the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews*, 53 F.3d at 1039-40.

"In determining a claimant's [residual functional capacity], an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins*, 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional

1  capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this

2  burden by setting out a detailed and thorough summary of the facts and conflicting evidence,

3  stating his interpretation thereof, and making findings."  *Magallanes*, 881 F.2d at 751 (quoting

4  *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

5          The opinions of treating physicians, examining physicians, and non-examining physicians

6  are entitled to varying weight in residual functional capacity determinations. *Lester*, 81 F.3d at

7  830.  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater

8  opportunity to know and observe the patient as an individual.  *Id.*; *Smolen*, 80 F.3d at 1285.  The

9  opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-

10  examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).  An ALJ may reject an

11  uncontradicted opinion of a treating or examining medical professional only for "clear and

12  convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating

13  professional may be rejected for "specific and legitimate" reasons.  *Id.* at 830.  However, the

14  opinions of a treating or examining physician are "not necessarily conclusive as to either the

15  physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169

16  F.3d 595, 600 (9th Cir. 1999).

17          **C.**     **The ALJ Properly Analyzed Evidence in the Record as a Whole**

18          "[A]n ALJ is responsible for determining credibility and resolving conflicts in medical

19  testimony." *Magallanes*, 881 F.2d at 750.  An ALJ may choose to give more weight to opinions

20  that are more consistent with the evidence in the record.  20 C.F.R. §§ 404.1527(c)(4) ("the more

21  consistent an opinion is with the record as a whole, the more weight we will give to that

22  opinion").

23          At step two, the ALJ found no new or material evidence supporting a finding of any

24  change in Plaintiff's severe impairments and adopted the severe impairments identified in the

25  prior proceeding.  AR 36-37.  Also as in the prior decision, the ALJ found that Plaintiff had no

26  impairment or combination of impairments that met or medically equaled the severity of any

27  listed impairment.  AR 37-30.

28

After setting forth the general procedure for determining a claimant's residual functional capacity at step four, the ALJ explained the applicable procedure and standard:

> As discussed above, the claimant filed a prior Title XVI application. A hearing was held, and the undersigned issued an unfavorable decision on October 22, 2014. This decision is administratively final and the principles of administrative res judicata apply. However, res judicata is not applied rigidly in administrative proceedings. The presumption of continuing nondisability does not apply if there are changed circumstances, including an increase in severity of the claimant's impairment, the existence of a new impairment or if the claimant is in a new age category. As stated, the claimant established a change in circumstance through the introduction of new and material evidence. Furthermore, he alleged an increase in the severity of his impairments. As such, the claimant rebutted the presumption of continuing nondisability. However, even if he is able to rebut the presumption of continuing nondisability, administrative res judicata requires the ALJ to adopt the findings from the prior decision unless there is new and material evidence relating to those prior findings. Therefore, the undersigned must examine the new evidence to determine whether there has been a change in the claimant's circumstances subsequent to the prior decision.

AR 39-40 (citations to administrative record omitted).

The ALJ noted that since the prior decision, Plaintiff's age category of a younger individual and his educational level of high school completion had not changed. AR 40. The remaining question was whether Plaintiff had proven his allegations that changes in his physical and mental impairments prevented him from performing basic work-like activities. The ALJ considered the expert medical opinions in this context, and the context of the record as a whole before concluding that Plaintiff did not prove increased disability.

The ALJ next reviewed Plaintiff's allegations that "his condition ha[d] worsened in the form of gaining a little bit of weight and feeling more depressed." AR 40. He summarized Plaintiff's complaint of pain that was only slightly alleviated by pain medication, and Plaintiff's need to walk and do therapeutic exercise to relieve his pain. AR 40. With regard to Plaintiff's mental health impairments, the ALJ noted that Plaintiff testified of depression due to isolation but was not taking any prescription antidepressant medication. AR 40.

The ALJ also summarized objective medical evidence of Plaintiff's medical condition and treatment since the prior decision. AR 40-42. He noted examinations finding mild or no

tenderness of Plaintiff's spinal muscles, improvement in physical therapy and generally normal

performance on physical tests included in Dr. Wagner's consultative examination.  AR 40-41.

The ALJ noted Plaintiff's consistent improvement from participation in yoga and his expressed

desire to become less dependent on medication,  AR 41.  Records of treatment and evaluation of

Plaintiff's mental health complaints indicated improvement so that by February 2018, assessment

indicated that Plaintiff's "mental health symptoms were no longer causing clinically significant

distress or impairment in his social, occupational or other areas of functioning."  AR 41-42.  The

ALJ concluded that objective medical evidence revealed no worsening of Plaintiff's physical

impairments and improvement of his mental impairments.  AR 42.

Finally, considering expert opinions of Plaintiff's impairments, the ALJ gave little weight

to Dr. Wong's opinion that Plaintiff's physical impairments were nonsevere, explaining that

objective evidence indicated that Plaintiff had severe back impairments that limited Plaintiff's

functioning more than Dr. Wong opined.  AR 42.  The ALJ gave great weight to Dr. Pong's

opinion of Plaintiff's residual functional capacity to perform sedentary work, finding the opinion

consistent with objective medical evidence.  AR 42-43.  In particular, the ALJ noted that Dr.

Pong's analysis acknowledged the effects of Plaintiff's ongoing pain and poor coordination.  AR

42-43.

The ALJ gave little weight to the opinions of Drs. Collado and Meyers, finding that the

objective evidence supported a finding that Plaintiff's mental impairments imposed greater

limitations than those doctors opined.  AR 43.  Similarly, the ALJ gave little weight to Dr.

Wagner's opinion that Plaintiff was able to perform medium work, explaining that objective

evidence of the abnormalities of Plaintiff's spine supported greater limitations.  AR 43.

Because of the significant discrepancies between Dr. Cohen's two opinions, the ALJ gave

limited weight to those opinions.  AR 43-44.  Although the ALJ interpreted the second opinion to

indicate that Plaintiff's condition had improved, he found that physical therapy notes and

Plaintiff's testimony supported a conclusion that Plaintiff was capable of lifting less weight than

Dr. Cohen opined.  AR 43.

1    The ALJ gave great weight to Dr. Chandler's opinion that Plaintiff was moderately

2    limited in interactions with the public, coworkers and supervisors, and had moderate difficulty

3    maintaining attention and concentration and enduring the stress of the consultative interview.  AR

4    44.  He found that Dr. Chandler's opinions were consistent with her own observations; the test

5    results from the consultative examination; objective evidence that Plaintiff evinced variable

6    attention and concentration; and Plaintiff's own consistent testimony.  AR 44.

7    The ALJ gave significant weight to Dr. Spivey's opinion since it was consistent with

8    objective evidence and reflected the findings of the consultative examination, particularly

9    Plaintiff's limitations in concentrating and focusing.  AR 44.  In contrast, the ALJ gave limited

10   weight to Dr. Hudson's opinion, noting that Plaintiff had just begun treatment with Dr. Hudson,

11   whose opinions were not consistent with other evidence in the record.  AR 44.

12   The ALJ summarized:

13       [T]he above residual functional capacity assessment is supported by
         the opinions of Dr. Pong, Dr. Chandler, and Dr. Spivey, as well as
14       the medical evidence, showing that the claimant's physical condition
         was well-treated with medication and physical therapy, to allow
15       improved and stable physical function.  Likewise, the claimant's
         mental impairments caused some limitation in his concentration,
16       focus, and interacting appropriately, but the records otherwise show
         he was able to adapt and manage himself and was cognitively smart.
17       Furthermore, it was assessed in February 2018 [that] the claimant's
         mental health symptoms were no longer causing clinically significant
18       distress or impairment in the claimant's social, occupational, or other
         areas of daily functioning.
19
20       AR 45 (citations to administrative record omitted).

21   The Court is not required to accept Plaintiff's characterization of his treatment records or

22   his assessment of the medical opinions.  The ALJ fully supported his determination based on

23   multiple medical opinions and the evidence of record.  Even if this Court were to accept that the

24   record could support Plaintiff's opinion, the record amply supports the ALJ's interpretation as

25   well.  When the evidence could arguably support two interpretations, the Court may not substitute

26   its judgment for that of the Commissioner.  *Jamerson*, 112 F.3d at 1066.

///

27

28

1   **IX.     Conclusion and Order**

2          Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not

3   disabled is supported by substantial evidence in the record as a whole and is based on proper legal

4   standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of

5   the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of

6   Defendant, Andrew Saul, Commissioner of Social Security, and against Plaintiff, Anthony

7   Demello.

8

9   IT IS SO ORDERED.

10      Dated:   **April 27, 2020**                   **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28